[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband and the defendant wife were married on July 2, 1984 at New Canaan, Connecticut. There are two minor children issue of this marriage, to wit: Joseph David Redmon Fiddelman born January 2, 1986 and Matthew Scott Redmon Fiddelman born May 8, 1987.
This is a second marriage for the plaintiff husband, and a first marriage for the defendant wife.
Prior to this marriage the parties entered into a pre-nuptial agreement which mainly addresses the issue of inheritance. No serious claim is made that this agreement limits or sets the orders that may be entered by this court in this action. The plaintiff argues, however, that the agreement should be considered by the court for purposes of background information and the mind set of the parties.
The plaintiff husband is 59 years of age and is a college graduate. He is the President and Chairman of the Board of Columbia Diamond Ring Company, Inc. (hereinafter "CDR"), a family, founded and family owned jewelry manufacturing business. In 1987 he suffered a heart attack and underwent coronary artery bypass surgery. However, as of this date he states that he is in "fine CT Page 4885 health."
His first marriage ended in divorce in 1981. There were two children of this prior marriage, both boys, who are now aged 35 and 33. After the divorce these boys joined him in his business but there was a subsequent falling out and he has been estranged from them ever since. He has two grandchildren but he has never seen them.
The defendant wife is 38 years old and in good health although she is legally blind in one eye. She is a college graduate and for a number of years she was a flight attendant for Eastern Airlines, which employment terminated when the airline went out of business. In the past few years she has also been an, aerobics instructor. Her name at birth was Betty Jane Redmon, but because she acquired the nickname of "Popcorn" while in flight attendant school she had her name legally changed to Popcorn Redmon.
At the time of the marriage, the plaintiff husband was in the process of constructing a home in New Canaan, Connecticut and the parties moved into this home after they were married. The total cost of this home was in the area of $400,000. It was sold in 1989 for $1,300,000. The net proceeds of sale in the amount of $867,463.29 were loaned by the plaintiff husband to CDR. A large portion of this amount is still owed to the plaintiff husband by CDR. The defendant wife contributed $26,000 to the cost of this home by paying for the swimming pool.
Before the New Canaan home was sold, the parties constructed a new home in Greenwich, Connecticut for the total cost of $1,721,491, $1,350,000 of which came from borrowed funds secured by a mortgage. The defendant wife contributed approximately $145,000 to the cost of this home. The parties moved into the Greenwich home in 1988.
The parties stipulated that the value of CDR, all of the shares of common stock of which are owned by the plaintiff husband, was $1,890,790 as of December 31, 1990. The plaintiff husband owns two pieces of business property, one of which is located in Danbury, Connecticut and was formerly occupied by CDR and is now rented to others, and the other of which is located in Bethel, Connecticut and is currently occupied by CDR. The gross fair market value of these properties is $1,342,500 and $1,490,000, respectively. The properties are subject to the encumbrances and the receivable as shown on the plaintiff husband's financial affidavit. The equity in the Danbury property is $1,049,066 and the Bethel property has a negative equity of $447,044.48.
In addition to these properties and the note receivable from CT Page 4886 CDR, the plaintiff husband has a 100% vested Profit Sharing Retirement Fund at CDR valued at $504,827.64 as of December 31, 1991, a certificate of deposit in the amount of $50,000, and $19,771.30 in an IRA account.
The defendant wife has IRAs totaling $16,000. She also has liquid assets and real property inherited from her father, all as shown on her financial affidavit.
While the parties were living in New Canaan and while the defendant wife was pregnant with the first child her mother died short time after having been diagnosed as having cancer. After the birth of the second child, and while the parties were still living in New Canaan, the plaintiff husband suffered his heart attack and had the bypass surgery. Shortly thereafter the defendant wife's father died suddenly. These unfortunate events had a profound effect on the relationship of the parties. In addition, the Eastern Airlines strike and subsequent failure of the company added to the stresses.
The court finds that the marriage has broken down irretrievably and the same is hereby dissolved. The court does not, however, place any greater degree of fault on either party.
One of the major issues in this matter is that of the custody of the minor children. Both parties seek sole legal custody.[1]
The Family Relations Counselor who conducted the court ordered study of this matter recommended joint legal custody with specified times with each parent. In addition, she recommended that the parties consult on all major issues regarding the children, that if they disagree they should seek a third party recommendation and that if they still disagree that the plaintiff husband should have the final say. The attorney representing the minor children in his claims for relief has concurred in this recommendation but if the court declines to order joint legal custody he asks the court to award sole custody to the plaintiff husband with specified visitation rights for the defendant wife.
While there is a serious debate in the legal community in light of certain Appellate Court decisions as to whether a court can award joint legal custody when neither party requests it, that question need not be addressed here. It is the opinion of this court that under all of the facts and circumstances of this case, to award the parties joint legal custody would not be in the best interests of the children. The question then is which parent should have sole legal custody, a difficult and in this case a heart wrenching decision at best.
One lay witness testified that together the plaintiff husband and the defendant wife make a good set of parents but that CT Page 4887 separately they are each lacking something. As Dr. Paul F. Turner, the court appointed psychologist put it, one can look at the children as passengers in a boat at sea in a storm. The boat has to be piloted by a good navigator and the children need someone below decks to sooth them so they will not be too frightened. Dr. Turner sees the plaintiff husband as the navigator and the defendant wife as the one below decks.
In addition to the testimony of the parties and the Family Relation's Counselor, the court heard from the court appointed psychologist who testified at great length regarding the psychological testing of the parties and the children, a psychiatrist who had recently had three sessions with the defendant wife, the accountant for CDR, the children's nanny/babysitter, the older child's teacher and several other persons who were acquainted with the parties.
After a thorough review of all of the evidence presented in this case and after a careful review of what would be in the best interests of the children, the following order shall enter:
The plaintiff husband shall have sole legal custody of the minor children subject to the following conditions:
(a) Each of the parties shall be responsible for making the routine day to day decisions regarding the children when the children are physically residing with them.
(b) The parties shall consult with each other regarding all major decisions affecting the health, education and welfare of the children, provided, however, that if the parties cannot mutually agree on such decisions, the decision of the plaintiff husband shall prevail.
The parties shall share physical custody as follows:
(a) The children shall reside with the defendant wife from after school on Monday when school is in session, or from 9:00 a.m. on Monday when school is not in session, until Friday at 6:00 p.m.
(b) The children shall reside with the plaintiff husband from 6:00 p.m. on Friday until Monday morning when he shall take them to school when school is in session or 9:00 a.m. on Monday when school is not in session. If Monday is a legal holiday then the time for return shall be advanced to Tuesday at the same times.
(c) The defendant wife may, at her option I reverse the schedule set forth in (a) and (b) above one time per month provided she gives the plaintiff husband at least two weeks notice CT Page 4888 of the times she wishes to effect such change. If the defendant wife so elects, the net result will be that the children will be with the defendant wife for seven consecutive nights and then with the plaintiff husband for seven consecutive nights. Therefore, each party shall have the option of having the children with them from 5:00 p.m. to 8:00 p.m. on the Thursday evening when they are with the other party during this seven night period.
(d) The above schedule shall be maintained during any portion of the summer school recess when the children are in camp. During the period the children are not in camp, the parties shall share such time equally on such schedule as they shall mutually agree, provided that no one parent shall have such shared time with the children for a continuous period of more than two weeks.
(e) The Thanksgiving, Christmas, Winter and Spring school recesses shall be alternated between the parties to commence with the defendant wife having the children with her for the 1991 Christmas recess and the 1992 Spring and Thanksgiving recesses and the plaintiff husband having the children with him for the 1991 Thanksgiving recess and the 1992 Winter and Christmas recesses.
(f) Notwithstanding any of the above, the defendant wife shall have the children with her, if they are not already with her as scheduled above, every Christmas from Christmas Eve at 5:00 p.m. to Christmas Day at 8:00 p.m. and every Easter Sunday from 8:00 a.m. to 8:00 p.m.
(g) Notwithstanding any of the above the plaintiff husband shall have the children with him, if they are not already with him as scheduled above, on the first night of Passover from 5:00 p.m. to 8:00 p.m. on the first day of Rosh Hashanah and Yom Kippur day from 8:00 a.m. to 8:00 p.m. and on the first night of Hanukkah from 5:00 p.m. to 8:00 p.m.
(h) The parent who does not have the children with him or her on the children's birthdays or on Mother's Day or Father's Day, shall have a reasonable time to see the children on such day in order to personally give or receive gifts and exchange good wishes.
(i) Such other and further times as the parties shall mutually agree.
These custody orders shall be subject to the following conditions:
(a) Neither party shall relocate the place where the children will be residing with them to a place outside of the state of Connecticut without giving the other party at least 90 days CT Page 4889 prior written notice so that the issue of whether such relocation is in the best interest of the children and, if so, whether these custody orders should be modified can be submitted to this court, at the request of either party.
(b) In the event the defendant wife's future employment shall cause any of the above shared physical custody arrangements not to be in the best interest of the children, either parent may, of course, seek an appropriate modification.
(c) Each of the parties shall keep the other informed at all times of the whereabouts of the children, if it is other than in the general area of that home while said children are with them and shall, if either has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of said children, promptly notify the other. Each of the parties will furnish the other with copies of any reports from third persons concerning the health, education or welfare of said children.
(d) The parties shall exert every reasonable effort to maintain free access, including telephone access, and unhampered contact between said children and each of the parties and to foster a feeling of affection between the said children and the parties hereto. Neither party shall do anything which may injure the opinion of said children of the other party nor injure the opinion of said children as to their mother and father, or act in such a way as to hamper the free and natural development of said children's love and respect for the other party.
In addition, the court has taken into consideration all of the factors contained in 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes and further orders as follows:
1. The plaintiff husband shall pay to the defendant wife by way of an assignment of property pursuant to said 46b-81 the sum of $400,000 payable as follows:
 (a) The sum of $150,000 within 30 days of the date hereof, and
 (b) The sum of $250,000 from the net proceeds of sale of the family home as hereinafter provided. In the event said net proceeds of sale are less than $250,000 then any such shortfall shall be paid to the defendant wife by the plaintiff husband with 30 days of the sale and closing of said premises.
2. The jointly owned real property located at 106 Porchuck CT Page 4890 Road, Greenwich, Connecticut shall immediately be listed for sale with a mutually acceptable listing broker on the Multiple Listing Service for Greenwich, Connecticut at the initial listing price of $1,900,000. If a bona fide offer is made within 95% of the initial or any subsequent listing price and one party shall wish to accept said offer, the other party must accept said offer. Nothing herein contained shall prevent the parties from accepting an offer of less than 95% of the existing listing price. In the event the property shall be listed for more than ninety days at a specific listing price and there shall be no acceptable offer made, the parties shall endeavor to agree upon a lesser listing price, and in the event the parties cannot so agree, this court shall retain continuing jurisdiction to order a diminished listing price. This court shall also retain continuing jurisdiction to order the parties to accept a bona fide offer less than 95% of the then existing listing price if, in its sole discretion, it feels under all the circumstances to do so would be appropriate. Notwithstanding anything to the contrary contained above, at the option of the plaintiff husband, the closing of title to the premises shall not be prior to December 9, 1991, so as to permit the plaintiff husband the right to avail himself of the $125,000 lifetime capital gains exclusion. The net proceeds of sale shall be divided as follows: (a) the first $250,000 to the defendant wife as provided in paragraph 1(b) hereof and the balance to the plaintiff husband. Net proceeds shall be defined as the gross sale price less the then existing principal balance on the mortgage, the real estate brokerage commission, the real estate conveyance and transfer taxes and reasonable closing costs and expenses including legal fees. By agreement of the parties neither party may directly or indirectly buy said premises nor live in the same after its sale.
3. The defendant wife has agreed, and it is so ordered, that she shall sign an amended Form 2119 indicating her consent with respect to a rollover of capital gain occasioned to the plaintiff husband by reason of the sale of the New Canaan premises. The plaintiff husband shall be solely liable for and shall indemnify and hold the defendant wife harmless from any and all capital gains tax, whether state or federal incurred by either party and arising out of the sale of the New Canaan property and the Greenwich property. To secure this indemnity the defendant wife shall have a security interest in the premises owned by the plaintiff husband and located at Briar Ridge Road, Danbury, Connecticut.
4. Until the sale and closing on the Greenwich property, or until the defendant wife elects to vacate said premises, whichever event shall first occur, the parties shall continue the "birdnesting" arrangement that is presently in existence except that it shall be for the times hereinabove ordered. That is, each CT Page 4891 party shall have the exclusive use and occupancy of said premises during such period of time that the children are residing with that party.
5. Until the sale and closing on the Greenwich property the plaintiff husband shall pay when due, and be responsible for, all costs in connection with said premises including mortgage, real estate taxes, homeowners insurance, utilities and routine maintenance and repairs.
6. Until the sale and closing on the Greenwich property or the defendant wife vacates said premises, whichever event shall first occur, the plaintiff husband shall pay to the defendant wife child support in the amount of $500.00 per month per child. After, the sale and closing of said premises or the defendant wife vacates said premises, whichever event first occurs, the plaintiff husband shall pay to the defendant wife the sum of $1,000.00 per month per child, until such child reaches the age or majority or is sooner emancipated. Said payments shall be subject to a contingent wage withholding.
7. The plaintiff shall continue to maintain the presently existing health insurance, or its equivalent, for the benefit of the minor children. In addition, he shall pay all uninsured medical, dental, orthodontic, ophthalmic, psychological and psychiatric expenses incurred on behalf of the minor children provided, however, that except in the case of an emergency no such expenses for which the plaintiff husband might be liable shall be incurred by the defendant wife without his prior consent, which consent shall not be unreasonably withheld. This order shall be subject to the provisions of 46b-84 (c) of the Connecticut General Statutes.
8. The plaintiff husband shall, at the option of the defendant wife, continue to maintain his presently existing health insurance for the benefit of the defendant wife for so long as he is permitted to do so under the terms of the underlying policies, and/or pursuant to any state or federal law; provided, however, that any additional premium occasioned thereby shall be paid to the plaintiff husband by the defendant wife.
9. The plaintiff husband shall maintain insurance on his life in the sum of $100,000 with the defendant wife as beneficiary so long as he has any obligation to pay periodic alimony to the defendant wife under the terms hereof.
10. The plaintiff husband shall maintain insurance on his life and name the children as beneficiaries thereof in the sum of $250,000 each until such child reaches his majority or is sooner emancipated. CT Page 4892
11. The plaintiff husband shall pay all costs of both children at the Whitby School for the 1991-1992 school year including tuition, fees, and other related expenses.
12. The plaintiff husband shall pay all reasonable costs of summer camp for both of the minor children.
13. The plaintiff husband shall purchase and pay for all of the reasonable and necessary clothing for the minor children.
14. Until the sale and closing on the Greenwich property or the defendant wife vacates said premises, whichever event first occurs, the plaintiff husband shall pay to the plaintiff wife the sum of $1250.00 per month as periodic alimony. After the sale and closing on the Greenwich property or the defendant wife vacating said premises, whichever event shall first occur said sum shall increase to $2500.00. All payments of periodic alimony shall terminate five years from the date hereof. Said payments shall sooner terminate upon the death of the plaintiff husband, the death of the defendant wife or the remarriage of the defendant wife. Said payments shall be subject to a contingent wage withholding.
15. There is hereby assigned to the defendant wife the amount of $100,000 from the plaintiff husband's Profit Sharing Retirement Fund at CDR. The attorney for the plaintiff husband shall prepare a Qualified Domestic Relations Order (QDRO), submit the same to the plan administrator and the attorney for the defendant wife. After it has been approved it shall be submitted to this court for the required signature. This court retains jurisdiction for the purpose of issuing said QDRO.
16. The parties shall divide their furniture, furnishings and household goods by mutual agreement. If they are unable to agree, then the matter will be and it hereby is referred to the Family Services Unit of the Superior Court at Stamford for a report to the court. Upon receipt of such report this court will enter such orders as it deems appropriate.
17. The balance of the fee due to Attorney Gaetano Ferro and the balance due to Dr. Paul F. Turner shall be paid 82% by the plaintiff husband and 18% by the defendant wife. Said payment shall be made within 30 days of the date hereof.
18. Except as expressly provided herein, all of the liabilities shown on the financial affidavits of the parties filed with this court on April 29, 1991 shall be the sole obligation of party upon whose affidavit said liability appeals and they shall indemnify and hold the other party harmless therefrom. CT Page 4893
19. Except as expressly provided herein, all of the property both real and personal shown on the financial affidavits of the parties filed with this court on April 29, 1991 shall be the sole and exclusive property of the party upon whose affidavit such property appears.
20. Each party shall be responsible for his or her attorney's fees and costs incurred in this action.
FREDERICK A. FREEDMAN, JUDGE
FOOTNOTE